**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:19-CV-00133-HBB**

**MELODY A. NORRIS**                                                                          **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                        **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Melody A. Norris ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 15) and Defendant (DN 20) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).   By Order entered December 4, 2019 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

1

<u>FINDINGS OF FACT</u>

Plaintiff previously filed applications for Disability Insurance Benefits and Supplemental Security Income on August 19, 2013 (Tr. 377).   Following a video hearing on January 12, 2015, Administrative Law Judge David S. Pang (ALJ Pang) concluded that Plaintiff had not been under a disability from August 6, 2013 through March 16, 2015, the date of the decision, because she has the residual functional capacity (RFC) to perform her past relevant work as a cook, child care attendant, and dairy helper (Tr. 377-90).   ALJ Pang found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but she cannot work in unprotected heights, operate heavy machinery, or operate a motor vehicle (Tr. 384).   On April 19, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 397-400).   This Court affirmed the final decision of the Commissioner (Tr. 503-19).

Meanwhile, Plaintiff protectively filed an application for Disability Insurance Benefits on May 5, 2015 and an application for Supplemental Security Income on June 27, 2016 (Tr. 11, 635-36, 629-34).   In both applications, Plaintiff alleged that she became disabled on April 30, 2014 as a result of Graves Disease; depression; thyroid issues; face, neck and back pain; chronic obstructive pulmonary disease (COPD); diabetes; high blood pressure; stomach issues; cholesterol; and kidney stones (Tr. 653).   On July 17, 2018, Administrative Law Judge Roosevelt Currie ("ALJ") conducted a video hearing from St. Louis, Missouri (Tr. 11, 334-37).   Plaintiff and her attorney, Charles Dale Burchett, participated from Bowling Green, Kentucky (<u>Id.</u>).   Theresa Wolford, a vocational expert, testified during the hearing (<u>Id.</u>).

In a decision dated August 29, 2018, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 11-24).   At

the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 30, 2014, the alleged onset date (Tr. 14).   At the second step, the ALJ determined that Plaintiff has the following "severe" impairments: Graves Disease, degenerative disc disease, diabetes mellitus, history of obesity, left foot drop, and depression (Id.).   The ALJ also determined that Plaintiff's liver condition and COPD are "non-severe" impairments within the meaning of the regulations (Id.).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 14-15).   Next, the ALJ found that Plaintiff has the RFC to perform a range of light work because she is able to lift, carry, push and pull up to 10 pounds frequently and 20 pounds occasionally; she is able to stand/walk for about four hours and sit for up to six hours in an eight-hour workday, with normal breaks; she is able to occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs; she can never climb ladders, ropes or scaffolds; she must avoid concentrated exposure to vibrations, heights, moving machinery, and similar hazards; she cannot operate heavy machinery, or operate a motor vehicle; she can perform simple routine, repetitive tasks, no fast paced production work; she can have frequent interaction with co-workers, supervisors, and public; and she has frequent bilateral depth perception (Tr. 17).

At the fourth step, the ALJ relied on testimony from the vocational expert to find that Plaintiff can perform her past relevant work as a dietary aide, as she actually performed the job (Tr. 22-23).   In the alternative, the ALJ relied on testimony from the vocational expert to conclude there are other jobs in significant numbers in the national economy that Plaintiff can perform considering her RFC, age, education, and past work experience (Tr. 23-24).   Therefore, the ALJ

3

concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from April 30, 2014 through the date of the decision (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 622-28).   The Appeals Council denied Plaintiff's request for review (Tr. 1-5).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case <i>de novo</i>, nor resolve conflicts in evidence, nor decide questions of credibility." <u>Cohen v. Sec'y of Health & Human Servs.</u>, 964 F.2d 524, 528 (6th Cir. 1992) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); <i>see</i> 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered

the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; <u>Cline v. Comm'r of Soc. Sec.</u>, 96 F.3d

146, 148 (6th Cir. 1996); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and

Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II

Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term

"disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than twelve (12)
> months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a),

416.905(a); <u>Barnhart v. Walton</u>, 535 U.S. 212, 214 (2002); <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923

(6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential

evaluation process for evaluating a disability claim.   *See* "Evaluation of disability in general," 20

C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable
     impairment or combination of impairments that satisfies the
     duration requirement and significantly limits his or her
     ability to do basic work activities?

3)   Does the claimant have an impairment that meets or
     medically equals the criteria of a listed impairment within
     Appendix 1?

5

4)      Does the claimant have the RFC to return to his or her past
relevant work?

5)      Does the claimant's RFC, age, education, and past work
experience allow him or her to perform a significant number
of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

Finding No. 3

1.   Arguments of the Parties

Plaintiff asserts the ALJ failed to address the diagnosis of failed back syndrome, lumbar,

from the pain management provider (DN 15 PageID # 2979, citing Tr. 2306, 2385, 2388, 2392,

2395, 2398, 2427, 2434, 2438, 2441, 2444, 2447, 2451).   Plaintiff contends that a remand is

necessary to assess her failed back syndrome both in regard to physical limitation and when

addressing symptoms (Id.).

Defendant does not expressly respond to this claim (DN 20).   But he does argue the ALJ

properly evaluated Plaintiff's physical impairments and accounted for them in the RFC

determination (DN 20 PageID # 2999-3009).

2.   Discussion

At the second step in the sequential evaluation process a claimant must demonstrate she

suffers from a "severe medically determinable physical or mental impairment that meets the

duration requirement . . . or a combination of impairments that is severe and meets the duration

requirement . . ."   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); Social Security Ruling 16-

3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)

(per curiam).   Here, Plaintiff has cited treatment records from her pain management providers

6

(Drs. Vessels, Reynolds, Miller, and Unick) that merely indicate a diagnosis of failed back syndrome (DN 15 PageID # 2979 citing Tr. 2306, 2385, 2388, 2392, 2395, 2398, 2427, 2434, 2438, 2441, 2444, 2447, 2451).   The ALJ found that Plaintiff's degenerative disc disease is a severe impairment.   Despite having the burden to do so, Plaintiff has not identified any evidence in the record demonstrating this impairment, as distinguished from the degenerative disc disease, significantly limits her physical ability to do "basic work activities."   20 C.F.R. §§ 404.1522(a), 416.922(a).

Notwithstanding, the Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are found non-severe, when other impairments are found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and the administrative law judge should consider both the severe and non-severe impairments in the remaining steps.  *See* Anthony v. Astrue, 266 F. Appx. 451, 457 (6th Cir. 2008) (citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)). Here, at the second step, the ALJ found that Plaintiff had six "severe" impairments, including degenerative disc disease of the lumbar spine (Tr. 14).   At the third step, the ALJ considered the medical evidence and determined that Plaintiff's degenerative disc disease of the lumbar spine did not meet or medically equal Listing 1.04 Disorders of the Spine (Tr. 15).   At the fourth step, the ALJ considered the evidence concerning Plaintiff's degenerative disc disease of the lumbar spine which includes the treatment records from Dr. Vessels, the pain management provider, in assessing Plaintiff's RFC (Tr. 17-22).   The ALJ included exertional, postural, and environmental restrictions in the RFC to address the limitations imposed by Plaintiff's back condition (Id.).   At the fourth step, the ALJ relied on the RFC in finding that Plaintiff could return to her past relevant

work as a dietary aide (Tr. 22-23).   The ALJ also relied on the RFC in concluding that Plaintiff

could also perform other jobs that exist in significant numbers in the national economy (Tr. 23-

24).   In sum, because the ALJ found that other impairments are severe, continued with the

sequential evaluation process, and considered all of Plaintiff's impairments in the remaining steps,

the purported error is harmless.   *See* Maziarz, 837 F.2d at 244; Mish v. Comm'r of Soc. Sec., No.

1:09-CV-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011); Stephens v. Astrue, No. 09-

55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. Mar. 31, 2010); Meadows v. Comm'r of Soc. Sec.,

No. 1:07cv1010, 2008 WL 4911243, at *12-13 (S.D. Ohio Nov.13, 2008); Jamison v. Comm'r of

Soc. Sec., No. 1:07-CV-152, 2008 WL 2795740, at *8-9 (S.D. Ohio July 18, 2008); Tuck v. Astrue,

No. 1:07-CV-00084-EHJ, 2008 WL 474411, at *3 (W.D. Ky. Feb. 19, 2008).

## Finding No. 5

### 1.   Arguments of the Parties

Plaintiff assert the physical and mental limitations in the ALJ's RFC determination are not

supported by substantial evidence (DN 15 PageID # 2979-81).   Plaintiff faults the ALJ for giving

little weight to the physical limitations expressed by her primary care provider, Dr. Allison

Campbell (Id.).   Plaintiff also accuses the ALJ of discounting or disregarding the opinion evidence

in the record, even from the non-examining state agency medical and psychological consultants

and substituting his own judgment in assessing both the physical and mental limitations in the RFC

(Id.).   Plaintiff points out while the ALJ discussed the evidence in assessing the paragraph B

criteria for Listing 12.04, he did not explain how he arrived at the specific mental limitations in

the RFC (Id.).   Further, the ALJ assessed a moderate limitation on Plaintiff interacting with others,

yet indicated Plaintiff is capable of frequent interaction with co-workers, supervisors, and the public in the RFC (Id.).

Plaintiff contends the ALJ's evaluation of her symptoms is not supported by substantial evidence (Id. PageID # 2983-84).   For example, the ALJ seemingly discounts Plaintiff's statements regarding the limitations imposed by her low back symptoms by noting that on April 1, 2016 Plaintiff reported being able to walk on a treadmill for 15 minutes a day (Id.).   Yet the ALJ fails to consider Plaintiff's testimony that she is no longer able to walk on the treadmill due to foot drop (Id.).   Further, the ALJ failed to recognize that Plaintiff reported her ability to walk and complete daily housework is dependent on both medication and rest; and her ability to do such activities sporadically does not support the ability to function in a work setting for eight hours a day and five days a week (Id.).   Plaintiff contends the ALJ did not give an appropriate rationale for discounting her testimony regarding falls/stumbling, bad days, and the inability to stand for more than 10 to 15 minutes (Id. citing Tr. 348, 352, 360).

Defendant argues the ALJ properly evaluated Plaintiff's physical and mental impairments, properly accounted for them in the RFC, and substantial evidence supports those findings (DN 20 PageID # 2999-3009).   Defendant asserts the ALJ properly discounted Dr. Campbell's June 18, 2018 comment that "I do not think she will be able to work" (Id. citing Tr. 2803).   Further, the ALJ's assignment of weight to the other medical opinions in the record comport with applicable law and are supported by substantial evidence in the record (Id.).   Defendant points out so long as substantial evidence supports the ALJ's findings, the Court should defer to those findings even if there is substantial evidence to support an opposite conclusion (Id.).

Defendant contends that substantial evidence supports the ALJ's determination that Plaintiff's subjective statements were not entirely credible (DN 20 PageID # 3009-20).   Defendant asserts that the record is replete with evidence supporting the ALJ's finding (Id.).

2.  Discussion

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a), 416.946(c).   Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.     20 C.F.R. §§ 404.1527(c), 404.1529(a), 416.927(c), 416.929(a).

The Court will begin by addressing Plaintiff's claim regarding the ALJ's assignment of weight to Dr. Campbell's medical opinions in the record.   As Plaintiff filed his applications prior to March 27, 2017, the rules in 20 C.F.R. §§ 404.1527 and 416.927 apply to the ALJ's assignment of weight to the medical opinions in the record.   The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> The source of the opinion . . . dictates the process by which the Commissioner accords it weight.   Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).   If the Commissioner does not give a

treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

Dr. Campbell is a treating source. In a letter dated November 5, 2013, she commented as follows:

Ms. Norris has several medical issues including Graves disease with thyrotoxic exophthalmos, low back pain, and kidney stones. She has a severe case of thyrotoxicosis and is followed by a specialist in Nashville. This disease affects her vision and causes a great deal of pain, even though her disease is controlled she still suffers from pain and vision problems. Flares can be painful and she often is not able to work. She also suffers from low back pain that flares at times.

11

> During the time I have followed her, she has had increasing flares, even with maximized treatment.   She recently suffered a bout with kidney stones that has added to her issues.   It is my opinion with her issues, she is no longer able to continue to work.   The stress and prolonged standing required [sic] her job exacerbate her condition. I have recommended that she proceed with disability.

(Tr. 1788).   Dr. Campbell opined that Plaintiff is disabled by her medical issues, instead of expressing impairment-related functional limitations.   *See* 20 C.F.R. §§ 404.1513(a)(2), 404.1527(a)(1), 416.913(a)(2), 416.927(a)(1).

In a letter dated August 6, 2015, Dr. Campbell reported that since 2013 there has been no improvement in Plaintiff's condition and her eye disease has worsened (Tr. 1439).   Dr. Campbell indicated that Plaintiff "was looking at further surgery on her eyes and continues to see a specialist regularly" (Id.).   Dr. Campbell also commented that Plaintiff "has continued off work since 2013 and I do not think that she will ever return (Id.).   Thus, Dr. Campbell reiterated her opinion that Plaintiff is disabled by her medical issues instead of expressing impairment-related functional limitations.

On June 18, 2018, Dr. Campbell, filled out parts of a form entitled "PHYSICAL MEDICAL SOURCE STATEMENT" (Tr. 2800-03).   On the first page, Dr. Campbell reported the following diagnoses: foot drop, diabetes type 2, COPD, htn (hypertension), depression, anxiety, nephrolithiasis (kidney stones), Graves disease with ophthalmopathy, degenerative disc disease and chronic low back pain (Tr. 2800).   Dr. Campbell indicated a "fair" prognosis (Id.). Dr. Campbell listed Plaintiff's symptoms as fatigue, cough, weakness, back pain with radiation, anxiety, nausea, facial pain, and constant nausea (Id.).   Notably, Dr. Campbell listed the clinical and objective signs as "foot drop, prominent eyes [consistent with] Graves disease" (Id.).   Dr.

12

Campbell described Plaintiff's treatment and response as "seen pain management – on meds, had epidurals does take narcotic medication which might cause nausea" (Id.).   On the pages that followed, Dr. Campbell did not respond to questions concerning exertional, postural, manipulative, and other types of limitations (Tr. 2801-03).   Instead, Dr. Campbell commented "I do not do functional capacity exams but can refer [patient] to PM&R or physical therapy for further testing.   Based on her current meds & health problems I do not think she will be able to work." (Tr. 2803).   In sum, Dr. Campbell again opined that Plaintiff is disabled by her medical issues instead of expressing impairment-related functional limitations.

The ALJ indicated he gave "little weight" to Dr. Campbell's opinions (Tr. 21).   Consistent with applicable law, the ALJ recognized that Dr. Campbell's opinions are not medical opinions, but are, instead, opinions on the issue of disability which is reserved to the Commissioner (Id.).   See §§404.1527(d)(1), 404.1546(c), 416.927(d)(1), 416.946(c).   Further, the ALJ noted that Dr. Campbell's opinion was inconsistent with other evidence in the record, including an eye exam and a finding by a treating eye doctor, indicating Plaintiff's vision did not prevent her from performing all work (Tr. 21).   The ALJ's findings are supported by substantial evidence in the record and comport with applicable law.

In the November 5, 2013 letter, Dr. Campbell opined that the prolonged standing and stress required by Plaintiff's job exacerbated her condition (Tr. 1788).   At best this is a vague impairment-related functional limitation.   Plaintiff accuses the ALJ of failing to address this limitation.   To the contrary, in making the RFC determination, the ALJ considered the medical evidence and other medical opinions in the record as well as Plaintiff's level of daily activities (Tr. 17-22).   The ALJ's RFC finding specifically addressed prolonged standing by limiting Plaintiff

13

to standing/walking for about four hours and sitting for up to six hours in an eight-hour workday, with normal breaks (Tr. 17).   Additionally, the ALJ's RFC finding provided for job related stress by restricting Plaintiff to simple, routine, repetitive tasks, with no fast-paced production work (Id.).

Next, Plaintiff takes issue with the ALJ's assessment of her mental limitations in the RFC. In Finding No. 3, the ALJ concluded that Plaintiff's depression is a severe impairment (Tr. 14). In connection with Finding No. 4, the ALJ made paragraph B criteria determinations for Listing 12.04 which pertains to depressive, bipolar and related disorders (Tr. 15-17).   The ALJ determined that Plaintiff had a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing herself (Id.).   Regarding interacting with others, the ALJ noted Plaintiff's testimony indicated she prefers to be alone and does not like to be around people, but she can interact with family and attends church twice a month (Tr. 16).   Further, on multiple occasions examination notes have indicated Plaintiff's mood has been good (Id.).   Examination notes also indicated she exhibited normal attention and concentration and she was cooperative (Id.).   From the ALJ's discussion, it appears that he concluded Plaintiff was on the lower end of a moderate range of limitation in interacting with others.

In the context of making the RFC determination, the ALJ reviewed the medical records, medical opinions, and Plaintiff's level of activity in assessing her mental limitations (Tr. 17-22). In assessing the medical opinions, the ALJ gave little weight to those expressed by the state agency psychological consultants because they indicated Plaintiff did not have a severe impairment (Tr. 21).   The ALJ explained the record supported a diagnosis of major depressive disorder and that

14

Plaintiff has received medication for the condition (Id.).   These findings are supported by substantial evidence.

The ALJ gave some weight to the opinions of consultative examiner Ollie C. Dennis, Ed.D., which included mildly limited in social interaction (Tr. 20, 2183).   The ALJ noted that the evidence supported a diagnosis of depression, but the evidence showed largely mild findings (Tr. 20).   Further, exam findings suggested that Plaintiff's mood had improved, and her mental health had been stable (Id.).   The ALJ also noted that Plaintiff had quit taking her medication but felt as though she was doing fairly well (Id.).   On exam, Plaintiff's mood had been noted as good on multiple occasions (Tr. 20).   Examination notes also indicated she exhibited normal attention and concentration and she was cooperative (Id.).   The ALJ observed that in July of 2018, Plaintiff denied depression, anxiety, and memory loss (Id.).   Substantial evidence in the record supports the ALJ's assignment of weight to Dr. Dennis' psychological opinions.   Additionally, the ALJ provided a good explanation why he gave little weight to the GAF scores in the record (Tr. 22). Substantial evidence in the record supports the mental limitations in the RFC determination. Further, contrary to Plaintiff's assertion, the ALJ provided sufficient information for the reader to understand why, in the paragraph B criteria, the ALJ found Plaintiff had a moderate limitation in interacting with others but, in the RFC assessment, he determined Plaintiff can have frequent, instead of occasional, interaction with co-workers, supervisors and the public.

In assessing Plaintiff's physical limitations, the ALJ explained that he gave some weight to the opinions of the state agency medical consultants but found additional limitations warranted in light of subsequently received evidence (Tr. 21).   For instance, the evidence demonstrated that Plaintiff has Graves's disease and an eye condition secondary to the disease (Id.).   The ALJ noted

15

that a treating eye doctor suggested the eye condition affects Plaintiff's depth perception (Id.). Other examiners have noted that Plaintiff's eyes are prominent and her eye lids droop (Id.). Additionally, newer evidence shows Plaintiff has a left foot drop that reduces her ability to stand and walk because she is unable to freely lift her left foot and she has decreased sensation (Id.). Further, the ALJ indicated he did not find breathing related limitations warranted as Plaintiff's lungs are clear, she continues to smoke, her spirometry results are within normal limits (Id.).   The ALJ also noted that during a stress test, Plaintiff experienced no chest pain or shortness of breath (Id.).   And, during a July 2018 exam Plaintiff exhibited non-labored breathing and good effort (Id.).   The ALJ provided good reasons, supported by substantial evidence for the weight accorded to the opinions of the state agency medical consultants.

The ALJ gave some weight to the opinions of Dr. Melson, the treating eye specialist (Tr. 22).   The ALJ explained while the doctor offered some vague findings, such as Plaintiff's eye condition could cause limitations, he did not find her vision was significantly limited which was consistent with the evidence (Id.).   For example, Plaintiff testified she was unaware of any restrictions on her driver's license (Id.).   Substantial evidence supports the ALJ's assignment of weight to Dr. Melson's opinions.

In assigning weight to the third-party statements, the ALJ noted they were generally consistent with Plaintiff's complaints about pain and impaired vision (Tr. 22).   The ALJ gave little weight to the statements because they were inconsistent with the medical evidence and Plaintiff being unaware of any vision restrictions on her driver's license (Id.).   The ALJ pointed out that Dr. Melson found that Plaintiff could work with small and large objects (Id.).   Additionally, the

ALJ noted Dr. Melson indicated Plaintiff can avoid hazards (Id.).   Substantial evidence supports the ALJ's assignment of weight to the third-party statements.

Plaintiff's subjective statements about pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings that show the existence of medical impairments that could reasonably be expected to give rise to the pain and other symptoms she has alleged.   20 C.F.R. §§ 404.1529(a), 416.929(a).   In determining whether Plaintiff suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.

The ALJ examined whether there is objective medical evidence of underlying medical conditions (Tr. 14-22).   Then the ALJ determined the objectively established medical conditions were not of such severity that they could reasonably be expected to produce the alleged disabling pain and other symptoms (Tr. 17-19).   Id.   Because the reported pain and other symptoms suggested impairments of greater severity than can be shown by objective medical evidence, the ALJ properly considered other information and factors that may be relevant to the degree of pain alleged.   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).   For example, the ALJ appropriately considered Plaintiff's level of daily activity as a factor in determining the extent to which pain is of disabling severity (Tr. 17-22).   See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990).   The ALJ properly considered whether there were any inconsistencies in the evidence and the extent to which there were conflicts between Plaintiff's testimony and the rest of the evidence (Id.).   See 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).   For example, the ALJ noted that despite her low back pain, treatment notes reveal that in April 2016, Plaintiff was

17

walking on a treadmill 15 minutes per day (Tr. 19).   Contrary to Plaintiff's assertion, the ALJ also considered Plaintiff's testimony and medical evidence indicating she subsequently developed "left foot drop that reduces her ability to stand and walk" (Tr. 18, 20, 21).   Further, the ALJ's discussion of how Plaintiff's testimony conflicted with the medical evidence provides an appropriate explanation for discounting Plaintiff's testimony regarding falls/stumbling, bad days, and her purported inability to stand for more than 10 to 15 minutes (Tr. 117-22).   Additionally, the ALJ considered the medications used to alleviate the alleged pain and other symptoms (Id.).

The ALJ found from the medical record and Plaintiff's testimony that she does not suffer pain and other symptoms to the extent she claimed.   In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to determine whether Plaintiff's testimony regarding the severity of the pain and other symptoms is fully consistent with the evidence.

While Plaintiff has cited evidence that substantiates her position, the standard that guides the Court's review is whether the findings in the final decision of the Commissioner are supported by "substantial evidence".   *See* Gayheart., 710 F.3d at 374 (citing 42 U.S.C. § 405(g); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).   Thus, the presence of evidence in the record that may have supported an opposite conclusion is dissimilar to a finding that substantial evidence does not support the ALJ's findings.   Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).   In sum, the undersigned concludes that the physical and mental limitations in the ALJ's RFC finding are supported by substantial evidence and fully comport with applicable law.

Finding No. 6

1.   Arguments of the Parties

Plaintiff argues substantial evidence does not support the ALJ's determination that she is capable of performing her past relevant work as a dietary aide (DN 15 PageID # 2984-).   Plaintiff acknowledges the ALJ relied on the vocational expert's testimony that the hypothetical individual could perform the job of dietary aide as Plaintiff performed that job (Id.).   Plaintiff asserts the vocational expert's testimony does not constitute substantial evidence because the hypothetical question limited standing/walking to about four hours in an eight-hour workday with normal breaks (Id.).   This limitation is inconsistent with Plaintiff reporting that her work as a dietary aide required walking all day (Id. citing Tr. 683).   Plaintiff acknowledges that the vocational expert identified other jobs she could perform with the restrictions in the ALJ's hypothetical question (Id.).   Plaintiff argues that testimony does not constitute substantial evidence because of her challenges to the RFC in Finding No. 5 (Id.).

Defendant has not responded to these arguments (DN 20).

2.   Discussion

At the fourth step in the sequential evaluation process, the Administrative Law Judge makes findings regarding the claimant's ability to return to the past relevant work.   *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).   The relevant inquiry is whether the claimant can return to her past type of work rather than just her past job.   Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987).   The Administrative Law Judge may rely on testimony from a vocational expert in determining whether the claimant can perform the demands and duties of her past job as actually performed, or as ordinarily required by employers throughout the national

19

economy.   Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987); see also 20 C.F.R. §§ 404.1565, 416.965; Social Security Ruling 82-61.

During the administrative hearing, the vocational expert testified that the Dictionary of Occupational Titles classified Plaintiff's previous work as a dietary aide, DOT code 319.677-014, with an SVP level of 2 and physical capacity of medium, but based upon the information in the file it was light as performed (Tr. 368).   The ALJ's hypothetical question to the vocational experts sets forth the limitations included in the RFC finding (Tr. 369).   The vocational expert testified with that RFC Plaintiff could perform the dietary aide as performed, but not as generally performed (Id.).   In response to an additional hypothetical question, the vocational expert identified other jobs in the national economy that Plaintiff could perform given her age, education, past work experience, and RFC (Tr. 369-70).

On cross-examination, Plaintiff asked if she were limited to standing two out of eight hours and lifting a maximum of ten pounds would it impact her ability to perform the dietary aide as performed (Tr. 371-72).   The vocational expert indicated the standing and lifting limitations would eliminate the dietician job identified in response to the first hypothetical question and the other jobs identified in response to the second hypothetical question (Tr. 372).   Notably, Plaintiff had the opportunity but failed to ask the vocational expert if the standing/walking limitation in the first hypothetical question was inconsistent with Plaintiff reporting that her work as a dietary aide required walking all day (see Tr. 683).   Thus, Plaintiff has failed sustain her burden of showing an inability to return to this past relevant job.   See Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   Further, the vocational expert's testimony provides substantial evidence to support the ALJ's finding that Plaintiff is able to perform her past relevant work as it is actually performed

(Tr. 22-23).   For the above reasons, Finding No. 6 is supported by substantial evidence in the record and comports with applicable law.   Considering this conclusion, the Court need not address Plaintiff's challenge to the other jobs the vocational expert identified in response to the ALJ's additional hypothetical question.

Prejudgment Remand

1.   Arguments of the Parties

Plaintiff seeks a remand pursuant to sentence six of 42 U.S.C. § 405(g) to consider new and material evidence that for good cause was not before the ALJ at the time of the decision (DN 15 PageID # 2981-83).   Specifically, Plaintiff is referring to records pertaining to her consultation with Dr. Glassman at the Leatherman Spine Center on August 2, 2018[1] (Tr. 264); an MRI without contrast performed on March 26, 2019 (Tr. 60); and appointments with Dr. Nessa S. Timoney of Bowling Green Neurosurgical, on May 28 and June 24, 2019 (Tr. 40-58).   Plaintiff contends the evidence is new because it was not before the ALJ at the time of the decision (Id.).

Plaintiff contends the evidence is material because, in contrast to earlier evidence, it documents spinal stenosis which is a more significant lumbar spine issue than recognized by the ALJ (Id.).   The information is time relevant because the consult with Dr. Glassman occurred shortly before the ALJ issued the decision on August 29, 2018 (Id.).   Plaintiff asserts the MRI and visits to Dr. Timoney at Bowling Green Neurosurgical addressed conditions evaluated by Dr. Glassman (Id.).   Further, the evidence supports Plaintiff's allegations of an inability to sustain full-time work due to the severity of her physical conditions (Id.).   For these reasons. Plaintiff

---

1   Dr. Glassman noted the current lumbar spine x-rays showed progressed mechanical collapse of the L4-5 level compared to films from two years earlier (Id.).   Plaintiff is also referring to

21

argues there is a reasonable probability the ALJ would have reached a different outcome if he had considered this new evidence (Id.).

Plaintiff contends good cause exists for not presenting the new evidence to the ALJ (Id.). The MRI and office visit with Dr. Timoney occurred after the ALJ issued the decision (Id.).   And she received Dr. Glassman's report after the ALJ issued the decision (Id.).   Alternatively, because the evidence arises from continued medical treatment of her back condition and it was not generated merely for the purpose of attempting to prove disability, good cause exists for her failure to submit this evidence prior to the ALJ decision (Id.).

Defendant argues a sentence six remand is neither appropriate nor warranted (DN 20 PageID # 3009-).   Defendant points out that the August 2, 2018 treatment note of Dr. Glassman indicated despite what the x-ray showed, Plaintiff exhibited a normal gait, was not in distress, had a reasonable range of motion of the lumbar spine, had normal sensation and reflexes, and had good range of motion of the hips and knees bilaterally without pain (Id.).   Defendant acknowledges the March 26, 2019 MRI showed changes since the July 13, 2016 MRI (Id.).   Defendant acknowledges that the June 24, 2019 treatment note of Dr. Timoney indicated Plaintiff would be an excellent candidate for anterior lumbar interbody fusion surgery to fuse L4 and L5 together (Id.).   But Defendant points out there is no evidence the surgery was ever performed (Id.). Defendant argues that Plaintiff has not demonstrated good cause for submitting this evidence after the ALJ's decision except for the fact it is dated right before and the months after the ALJ rendered his decision (Id.).   Defendant notes that Plaintiff did not notify the ALJ that she expected more evidence to become available and did not ask the ALJ to keep the record open so that additional

22

evidence could be submitted (Id.).   Further, the Appeals Council explained why the evidence submitted was not material (Id. citing Tr. 2, 43, 60, 264).

2.   Discussion

"A district court's authority to remand a case . . . is found in 42 U.S.C. § 405(g) . . ." Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006).   The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence six-remand)." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).   Plaintiff seeks a pre-judgment remand under sentence six of 42 U.S.C. §405(g).

Under sentence six of 42 U.S.C. § 405(g), the Court does not address the correctness of the administrative decision.   Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991), Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 483 (6th Cir. 2006).   "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding." Melkonyan, 501 U.S. at 98.   The party seeking this type of remand has the burden of demonstrating that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]"   42 U.S.C. § 405(g); see also, Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Faucher, 17 F.3d at 174-175.

The Supreme Court of the United States has explained that evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).   In arguing for a sentence six remand, Plaintiff focuses on only three records.   The first is an August 2, 2018 treatment note prepared by Dr. Steven Glassman with the Leatherman Spine Center (Tr. 260-64).   The next is a March 26, 2019 report concerning an MRI (without contrast) of Plaintiff's lumbar spine (Tr. 60). The third is a June 24, 2019 treatment note prepared by Dr. Nessa S. Timoney with Bowling Green Neurosurgical (Tr. 40-44).   None of these medical records were available to Plaintiff when the ALJ conducted the administrative hearing on July 17, 2018.   Plaintiff indicates she received a copy of Dr. Glassman's treatment note after the ALJ issued the decision on August 29, 2018.   The rest of the medical records were generated several months after the ALJ issued the decision. Thus, none of these medical records were available to Plaintiff before the ALJ issued the decision.

Evidence is "material" if there is "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." Ferguson, 628 F.3d at 276; Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988).   Notably, evidence is not considered material if it merely depicts an aggravation or deterioration in an existing condition.   Sizemore, 865 F.2d at 712.   Dr. Glassman's August 2, 2018 treatment note indicates that Plaintiff complained of left foot drop and lower back pain (Tr. 260.   His exam revealed a healthy appearing female with normal gait and no apparent distress who tolerated reasonable range of motion of the lumbar spine; had 4/5 strength in the lower extremities in all muscle groups; had some pain with flexion but more prominent with extension;

24

had normal sensation and symmetric reflexes bilaterally; no clonus; and had good range of motion of the hips and knees bilaterally without pain (Tr. 264).   Dr. Glassman indicated that x-rays of Plaintiff's lumbar spine demonstrate progressed mechanical collapse at the L4-5 level versus films from 2 years earlier (Id.).   He also noted an MRI of the lumbar spine demonstrates mechanical collapse and stenosis at the L4-5 level (Id.).   Dr. Glassman prescribed aqua therapy and indicated "[f]ollow up after completing MRI/injection for repeat imaging and exam" (Id.).   At best, this evidence merely depicts a deterioration of Plaintiff's degenerative disc disease of the lumbar spine. For this reason, there is not a reasonable probability that the ALJ would have reached a different disposition of Plaintiff's disability claims if he had the benefit of considering this evidence.

The March 26, 2019 report indicates an MRI (without contrast) of Plaintiff's lumbar spine revealed mild to moderate hypertrophic changes; mild L1-2, L2-3, and L5-S1 disc bulging; mild L3-4 disc bulging with moderate central spinal stenosis – increased since July 13, 2016; and status post L4-5 disc surgery with mild disc bulging versus postoperative changes (Tr. 60).   This evidence is not material because it depicts a deterioration of Plaintiff's existing condition nearly seven months after the ALJ rendered his decision.

The June 24, 2019 treatment note prepared by Dr. Timoney indicates that Plaintiff is status post right L4-5 lumbar hemilaminotomy with discectomy with return of symptoms (Tr. 43).   Dr. Timoney noted radiographic findings of L4-5 neuroforaminal stenosis on the right at her previous surgery site (Id.).   The doctor also noted that Plaintiff has a separate issue of a left common peroneal nerve injury resulting in foot drop associated with her rapid weight loss (Id.).   Dr. Timoney commented "[a]s she has disc height loss, instability and neuroforaminal stenosis, I think she would be an excellent candidate for an L4-5 ALIF (Id.).   This evidence is not material because

25

it depicts a deterioration of Plaintiff's existing condition nearly ten months after the ALJ rendered his decision.

"Good cause" is demonstrated by showing a reasonable justification for the failure to acquire and present the evidence to the Administrative Law Judge.   Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).   The Sixth Circuit has also indicated that "good cause" is "shown if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability."   Koulizos v. Sec'y of Health & Human Servs., No. 85-1654, 1986 WL 17488, at *1 (6th Cir. Aug. 19, 1986) (citing Wilson v. Sec'y of Health & Human Servs., 733 F.2d 1181 (6th Cir. 1984) and Willis v. Sec'y of Health & Human Servs., 727 F.2d 551 (6th Cir. 1984)).   Good cause is shown because the new evidence arises from Plaintiff's continued medical treatment of her degenerative disc disease, as opposed to generated merely for the purpose of attempting to prove disability.   However, Plaintiff is not entitled to a prejudgment remand pursuant to sentence six of 42 U.S.C. §405(g) because the evidence is not material.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

June 4, 2020

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:          Counsel

26